**STATE of Tennessee**

v.

**Jesus Baltazar Diaz RAMOS a/k/a Enrique Ruano Diaz.**

Court of Criminal Appeals of Tennessee, at Nashville.

Jan. 13, 2010 Session.

March 3, 2010.

Application for Permission to Appeal Denied by Supreme Court Aug. 26, 2010.

**410**

Dan R. Alexander, Nashville, Tennessee, for the appellant, Jesus Baltazar Diaz Ramos.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Victor S. Johnson, District Attorney General, and Sharon Reddick, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

Appellant, Jesus Baltazar Diaz Ramos a/k/a Enrique Ruano Diaz, was indicted by the Davidson County Grand Jury for aggravated rape of a child. After a jury trial, Appellant was convicted of the offense as charged in the indictment. As a result, he was sentenced to forty years in incarceration. After the denial of a motion for new trial, Appellant filed a timely notice of appeal. On appeal, Appellant argues: (1) the trial court erred by denying the motion for judgment of acquittal; (2) the trial court erred in "its interpretation and application of the statute and in not charging the jury with only the lesser included offenses;" (3) the trial court erred in admitting statements of the minor victim as excited utterances; (4) the trial court erred by admitting unauthenticated documents into evidence; (5) the trial court erred by admitting hearsay; (6) the trial court erred by failing to charge the jury with rape of a child; and (7) the cumulative effect of the trial court's errors denied Appellant due process of law. After a review of the record, we determine that the evidence was sufficient to support the conviction; that the victim's statements were properly admitted as excited utterances; that the trial court properly admitted a transcript of a recorded telephone call between the father of the victim and Appellant; that the trial court properly charged the jury; and that a defendant can be convicted of committing aggravated rape of a child when the victim is three years and two weeks of age. Consequently, the judgment of the trial court is affirmed.

## Factual Background

Edwin Martinez moved to Nashville in February of 2006 with his wife, Marina, and their daughter, J.M.,[1] who was born on November 11, 2003. They moved into Appellant's house. Appellant was Mr. Martinez's uncle. There were several other people living in the house including Elsa Osorto, Santos Rafino, Patricia Martinez, Antonio Ramirez, and another minor child. The occupants of the household spoke Spanish as their primary language.

On December 15, 2006, Mrs. Martinez was cooking in the kitchen. At the time, she thought that her daughter, J.M., was watching television in another room of the house. Around 1:30 p.m. that afternoon, Mrs. Martinez went upstairs to check on J.M. Mrs. Martinez saw J.M. come out of Appellant's bedroom. The child met her approximately halfway down the steps and told her mother that "[Appellant] touch me here; it hurts." The child pointed to her vaginal area. According to Mrs. Martinez, Appellant witnessed this exchange between mother and child and then proceeded to the bathroom without responding to the allegations made by the child.

J.M. was taken to the hospital and an examination revealed that there were abrasions on both sides of J.M.'s hymen. The injuries were described as "acute" and appeared to have been inflicted recently. There was also blood in the child's underwear. According to the examination, the "internal genital injury" that was present at the time of the exam was caused by some "blunt penetrating trauma."

After the examination was concluded, Mr. Martinez was asked by police to make a recorded telephone call to Appellant. During the telephone call, Appellant acknowledged that he touched J.M.

---

1. It is the policy of this Court to refer to minor victims of sexual abuse by their initials.

Appellant was arrested and indicted by the Davidson County Grand Jury for aggravated rape of a child. At trial, there was testimony that the parents of J.M. would at times leave her in the care of Appellant and his wife, Elsa Osorto. During those episodes, Appellant often changed the diaper of the child and assisted her when she went to the bathroom. In fact, the child slept in their bedroom on a "Dora couch" some nights until her mother and father returned from work. J.M.'s mother, on the other hand, denied that Appellant changed J.M.'s diapers or took part in her care.

According to the testimony at trial, Appellant and Mr. Ramirez went to Wal-Mart to get a filter for the air conditioner and other parts needed to do repairs on the house. They returned between 1:00 p.m. and 1:30 p.m. Mr. Ramirez installed the air filter at the bottom of the steps, and Appellant went upstairs to repair the bathroom sink.

Mr. Ramirez followed Appellant upstairs after about three minutes. Appellant was repairing the pipes in the bathroom when Mr. Ramirez got there. There were several other adults in the house at the time including Mrs. Marina Martinez, the child's mother, Patricia Martinez and Elsa Osorto.

Witnesses testified that J.M. came down the stairs "bumping her butt from step to step." Appellant's wife had also seen the child exhibiting this behavior and had heard Appellant warn the child that she would hurt herself if she continued to come down the stairs that way.

Around 1:30 p.m., Mrs. Marina Martinez went upstairs to check on J.M. and was met on the stairs by her daughter who told her that "[Appellant] touch me here, it hurts." The child was pointing to her vaginal area. Mrs. Marina Martinez examined the child and discovered that she appeared to have a genital injury. Mrs. Marina Martinez then confronted Appellant, who initially denied touching the child. When Mrs. Marina Martinez told Appellant that she was going to take the child to the hospital, Appellant admitted that he examined J.M. after she complained of pain in her genital area. At trial, Appellant testified that he did not touch the victim on the date in question.

At the conclusion of the jury trial, Appellant was convicted as indicted of aggravated rape of a child. As a result, the trial court sentenced Appellant to forty years in incarceration. After the denial of a motion for new trial, Appellant challenges the sufficiency of the evidence on appeal, specifically whether the statute defining aggravated rape of a child precludes victims who have attained the age of three but who have yet to attain the age of four. Appellant also argues that the trial court improperly admitted J.M.'s statements to her mother as excited utterances and erred in admitting an unauthenticated transcript of the recorded telephone call into evidence. Appellant also complains that the trial court did not fully charge the jury with lesser included offenses and that the cumulative effect of the trial court's errors denied Appellant due process of law.

## Analysis

### Sufficiency of the Evidence and the Application of Tennessee Code Annotated Section 39–13–531(a)

On appeal, Appellant first argues that Tennessee Code Annotated section 39–13–531(a) "as written, applies to children three (3) years of age or younger and the child alleged to be victimized in this case was over three (3) years of age." In conjunction with that argument, Appellant argues that the trial court erred in denying the motion for judgment of acquittal. The

State disagrees, arguing that the proof at trial established that the child was three years of age, as required by the statute.

■ Appellant contends that he could not be convicted of aggravated rape of a child because the victim at issue in the case herein was over the age of three. Appellant was convicted of violating Tennessee Code Annotated section 39–13–531(a), which defines aggravated rape of a child as "the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if the victim is three (3) years of age or less." Sexual penetration is "any intrusion, however slight, of any part of a person's body ... into the genital or anal openings of the victim's." T.C.A. § 39–13–501. According to Tennessee Code Annotated section 39–11–105, "[a] person attains a specified age on the day of the anniversary of the person's birthdate."

To support his argument on appeal, Appellant cites to several statutes in which the legislature chose to use a specific numerical age in addition to some other qualifying words such as "over," "above," and "under." Appellant cites statutes dealing with alcohol consumption, Tennessee Code Annotated section 1–3–113, educational attendance, Tennessee Code Annotated section 49–6–3001, the child labor act, Tennessee Code Annotated section 50–5–102(8), as well as others. Appellant opines that "had the legislature wanted the statute to apply the way the trial court ruled it applied, they could have said it applies to a child under the age of four (4) years."

■ We are reminded that generally, when construing a statute, every word within the statute is presumed to "have meaning and purpose and should be given full effect." *State v. Odom,* 928 S.W.2d 18, 29–30 (Tenn.1996) (quoting *Marsh v. Henderson,* 221 Tenn. 42, 424 S.W.2d 193, 196 (1968)). This Court's primary duty in construing a statute is "to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Owens v. State,* 908 S.W.2d 923, 926 (Tenn. 1995); *see also State v. Davis,* 940 S.W.2d 558, 561 (Tenn.1997). Legislative intent should be gleaned from the "natural and ordinary meaning of the language used, without a forced or subtle construction that would limit or extend the meaning of the language." *Carter v. State,* 952 S.W.2d 417, 419 (Tenn.1997). "In seeking to determine the 'natural and ordinary meaning' of statutory language, the usual and accepted source for such information is a dictionary." *English Mountain Spring Water v. Chumley,* 196 S.W.3d 144, 148 (Tenn.Ct.App.2005). Furthermore, this Court should construe a statute so that its component parts are consistent and reasonable, and inconsistent parts should be harmonized, where possible. *Odom,* 928 S.W.2d at 30.

Appellant cites *Hobson v. Postal Telegraph–Cable Company,* 161 Tenn. 419, 32 S.W.2d 1046 (1930), a case where the supreme court looked at Chapter 57 of the Public Acts of 1911, which made it unlawful to employ children "between the ages of fourteen and sixteen years." The plaintiff, a child that was sixteen years and eleven months of age, was injured while riding a motorcycle as part of his job as a messenger for the postal service. *Id.* The court determined that the legislature's intent was to include children that were only between the ages of fourteen and sixteen, that " 'the periods of time named as boundaries are excluded.' " *Id.* at 1047 (quoting 7 Corpus Juris, 1148). In other words, the court determined that the statute did not make it illegal to employ the plaintiff who was sixteen years and eleven months of age. Appellant also cites *Covell v. State,* 143 Tenn. 571, 227 S.W. 41 (1921), to support his argument. In *Covell,* the

court examined the statute found at chapter 9 of the Public Acts of 1913, as amended by chapter 143 of the Public Acts of 1919, dealing with compulsory education. *Id.* The statute provided that a child "between the ages of seven and sixteen years, inclusive, . . ." was covered under the statute. The court determined that the legislature's insertion of the word "inclusive" in the statute after the words "sixteen years" meant that the legislature intended the entire sixteenth year of a child to fall within the parameters of the statute. *Id.* Appellant argues that "had the state legislature wanted the statute [for aggravated rape] to apply the way the trial court ruled it applied, they could have said it applies to a child under the age of four (4) years." In this case, the victim was three years and one month of age. According to Appellant, the statute does not apply.

The State notes, and we agree, that the cases cited by Appellant for support of his position address statutory scenarios where the statutes employ the usage of the words "between the ages of," "between and including the ages of," or "inclusive." This is not the statutory language employed in Tennessee Code Annotated section 39–13–531(a), which plainly states that a victim of aggravated child rape must be "three years of age or less."

In the case herein, the evidence demonstrates that Appellant penetrated the victim's vagina with his hand and that the victim was three years and one month of age at the time of the offense. J.M.'s birthdate was November 3, 2003, and the offense took place on December 15, 2006. A medical examination confirmed the victim's injuries and Appellant admitted during a recorded telephone call to the touching of J.M.'s vagina. A person attains their specified age on the day of the anniversary of their birth. *See* T.C.A. § 39–11–105. When examining the natural and

ordinary meaning of "three years of age or less" as written in the statute in conjunction with the directive of Tennessee Code Annotated section 39–11–105, it is clear the victim in this case is considered three years of age until 12:01 a.m. on her fourth birthday. In other words, the victim attained the age of three years of age on November 3, 2006, and remained three years of age until her fourth birthday on November 3, 2007. The offense took place on December 15, 2006, while the victim was still three years of age. Had the legislature intended a different result, we presume that the statute defining aggravated rape of a child would have been written differently. Appellant is not entitled to relief on this issue.

### Excited Utterance

■ Next, Appellant claims that the trial court erred in admitting J.M.'s statements to her mother as excited utterances. J.M. came down the stairs, meeting her mother who was on the way up the stairs. J.M. stated, "[Appellant] touch me here; it hurts" while pointing at her genital area. Specifically, Appellant claims that he was unable to confront the witness and that there was no foundation that the statements were actually excited utterances. The State disagrees, arguing that the statement fell within the hearsay exception and was not testimonial.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). For a hearsay statement to be admissible, it must fall within the hearsay exceptions provided at Rule 803 of the Tennessee Rules of Evidence.

One of the long-recognized exceptions to the hearsay rule is the excited utterance exception found at Rule 803(2) of the Ten-

nessee Rules of Evidence. This exception applies to statements, "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." In *State v. Land*, 34 S.W.3d 516 (Tenn. Crim.App.2000), this Court stated that "[t]he underlying theory of this exception is that circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication." 34 S.W.3d at 528. For a statement to fall within this exception, three criteria must be met: (1) there must be a startling event or condition that causes the stress of excitement; (2) the statement must relate to the startling event or condition; and (3) the statement must be made while the declarant was under the stress of excitement. *Id.* at 528–29 (citing Neil P. Cohen, et. al., *Tennessee Law of Evidence* § 803(2).2 at 533–34 (3d ed.1995)).

It is clear that J.M.'s statement to her mother falls within the excited utterance exception found at Rule 803(2) of the Tennessee Rules of Evidence. As for the first criteria, Appellant's touching of J.M.'s vagina would certainly qualify as a startling event. This is especially true when one considers the fact that J.M. was three years old at the time of the incident. As for the second criteria, J.M.'s statement that "[Appellant] touch me here, it hurt" unquestionably relate to the startling event. The third criteria is also satisfied. Mrs. Martinez testified that she was met by her daughter coming down the stairs of the house almost immediately after the event occurred. When the child was examined, there appeared to be a genital injury. Clearly, J.M. would still have been under emotional and even physical stress from the rape. Because the statements in question fit within the excited utterance exception to the hearsay rule, this issue is without merit.

Moreover, Tennessee Rule of Evidence 803(3) allows the admission of "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition, (such as intent, plan, motive, design, mental feeling, pain, and bodily health)." The Advisory Commission Comments to this section note that "only the declarant's conduct, not some third party's conduct, is provable by this hearsay exception." *Id.* Accordingly, even if the statement were not admissible under the excited utterance exception, the portion of the victim's hearsay statement in which she told her mother that "it hurt" would have also been admissible as an "existing state of mind, emotion, sensation, or physical condition." We recognize, however, the portion of the hearsay statement "Jesus touch me here," identifying a "third party's conduct," would not have been admissible under the state of mind exception. *See State v. Farmer*, 927 S.W.2d 582, 595 (Tenn.Crim.App.1996) (holding the state of mind exception assumes "the declarant's own state of mind [is] relevant to a material issue" but excludes hearsay testimony admitted to prove a third party's conduct).

Further, Appellant is not entitled to relief on the basis of a violation of his right to confront a witness against him because the statement made by J.M. to her mother is not "testimonial hearsay" as contemplated by the rules of evidence. The Confrontation Clause prohibits the admission of testimonial hearsay unless the witness "was unavailable to testify, and the defendant had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53–54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The Confrontation Clause applies only to testimonial statements. *Davis v. Washington*, 547 U.S. 813, 823, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). A testimonial state-

ment "is typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact'" and includes "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" *Crawford*, 541 U.S. at 51–52, 124 S.Ct. 1354; *see also State v. Maclin*, 183 S.W.3d 335, 345 (Tenn.2006) (holding that "testimony involves a formal or official statement made or elicited with a purpose of being introduced at a criminal trial."). This Court examined a similar scenario in *State v. Charles L. Williams*, No. M2005–00836–CCA–R3–CD, 2006 WL 3431920, at *14 (Tenn.Crim.App., at Nashville, Nov. 29, 2006), where the State sought to introduce the statement of the victim to her mother that the defendant put his finger in her "bootie." In *Charles L. Williams*, the court determined that:

> [N]o "objective witness" could "reasonably" believe these simple statements were uttered by a child for use at a future criminal trial. Therefore, we conclude they were not testimonial. Nevertheless, as clarified by our supreme court, a confrontation right claim is not extinguished by a mere finding that a statement was nontestimonial:
>
> > If the statement is non-testimonial, the Confrontation Clause analysis does not end. Instead, consistent with *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 [ (1980) ], the court must determine whether the out-of-court statement bears adequate indicia of reliability-specifically, whether it falls within a "firmly rooted hearsay exception" or bears "particularized guarantees of trustworthiness."
>
> [*Maclin*, 183 S.W.3d] at 351 (quoting *Crawford*, 541 U.S. at 68 [124 S.Ct. 1354] ). In this case, the child victim's statements were admitted as excited ut-

terances, a firmly rooted hearsay exception, and also bear particularized guarantees of trustworthiness.

2006 WL 3431920, at *14. We determined above that the statements at issue qualify for the excited utterance exception to the general rule prohibiting hearsay. Accordingly, we conclude Appellant's confrontation rights under the Sixth Amendment and article I, section 9 of the Tennessee Constitution were not violated by the admission of the nontestimonial excited utterance of the victim. Appellant is not entitled to relief on this issue.

### *Introduction of Transcript of Recorded Telephone Call*

Next, Appellant claims that the trial court improperly admitted a transcript of the controlled telephone call between Appellant and the father of the victim, Mr. Martinez. Specifically, Appellant complains that the trial court admitted two transcripts of the same conversation, one of which Appellant argued could not be verified. Appellant also argues that the trial court erred by denying a limiting instruction with regard to the introduction of the transcripts. The State disagrees.

At trial, Mr. Martinez testified that he made a telephone call to Appellant that was recorded by the police. When the recording of the telephone call was introduced into evidence at trial, Mr. Martinez identified the recording and the voices on the recording. The conversation was in Spanish. The conversation was translated by Lee Hockaday. Mr. Hockaday testified at trial that he translated the recording into English. Mr. Hockaday admitted that there were "a few spots" on the tape that were not audible. Appellant objected to the introduction of the transcript, and the trial court overruled the objection, finding that "the witness has testified that his is a complete translation as far as he

can make it." Later on in the trial, Appellant denied saying that he touched the victim during the telephone call with Mr. Martinez and insinuated that the transcript prepared by the State was inaccurate. On cross-examination, Appellant was questioned about a transcript of the recorded telephone call that he and his first attorney had prepared. The second transcript also contained an admission by Appellant that he touched the victim. Appellant acknowledged that he recognized the second transcript but stated that he could not remember if there was a mistake in the transcript. The State offered Appellant's own transcript "to show that Appellant testified falsely earlier on direct when he indicated that he didn't say the things that he said on the tape ... [that] he knew what he was being accused of saying. And then he testified here just now that he doesn't remember saying those things." Appellant's counsel argued that the transcript had not been verified. The trial court allowed admission of the second transcript, noting that Appellant "furnished it to the State and ... asked [Appellant questions] with regard to certain questions and translations."

As we begin our analysis, we note well-established precedent providing "that trial courts have broad discretion in determining the admissibility of evidence, and their rulings will not be reversed absent an abuse of that discretion." *State v. McLeod*, 937 S.W.2d 867, 871 (Tenn.1996). Rule 901(a) of the Tennessee Rules of Evidence provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility [of evidence] is satisfied by evidence sufficient to the court to support a finding by the trier of fact that the matter in question is what its proponent claims." The testimony of a witness with knowledge "that a matter is what it is claimed to be" is sufficient. Tenn. R. Evid. 901(b)(1). Once this foun-

dation has been established, the "trier of fact then makes the ultimate decision of whether the item is actually what it purports to be." Neil P. Cohen et al., *Tennessee Law of Evidence* § 9.01[2][a] (5th ed.2005).

 With regard to the first transcript, prepared by Mr. Hockaday, we determine that the trial court properly admitted the transcript. Mr. Martinez testified that he made the phone call and that the call was recorded. Further, he recognized the recording introduced at trial and identified the voices on the recording. Mr. Hockaday testified that he translated the recording into English. The trial court gave an instruction to the jury that the transcript was the evidence if the jurors were fluent in Spanish. If the jurors were not fluent in Spanish, the trial court instructed the jury that the translation would be the evidence. Moreover, even though the statements on the recording and transcript were hearsay, they were not offered for the truth of the matter asserted. *See* Tenn. R. Evid. 801(c). The transcript was used by the State after Appellant denied "doing anything wrong" to the victim. The State then question Appellant about the conversation he had with Mr. Martinez. During this conversation Appellant admitted to touching the victim as opposed to admitting he had raped the victim. Appellant is not entitled to relief on this issue.

 The second transcript was introduced as rebuttal evidence. Any competent evidence which explains or directly applies to evidence introduced by the accused is admissible in rebuttal. *State v. Thompson*, 43 S.W.3d 516, 524 (Tenn. Crim.App.2000). "The [S]tate is given the right of rebuttal because it 'does not and cannot know what evidence the defense

will use until it is presented at trial.'" *Id.* (quoting *State v. Cyrus Deville Wilson,* No. 01C01–9408–CR–00266, 1995 WL 676398, at *9 (Tenn.Crim.App., at Nashville, Nov. 15, 1995)). The admission of rebuttal evidence, as well as the scope of such evidence, is within the sound discretion of the trial judge. *State v. Reid,* 213 S.W.3d 792, 831 (Tenn.2006).

From the transcript, it is clear that Appellant put the accuracy of the State's transcript at issue during his proof. We find no abuse of discretion on the part of the trial court in allowing the State to put on proof during rebuttal in the form of a transcript prepared by Appellant that was consistent with the evidence presented by the State and contrary to Appellant's own testimony. Therefore, we conclude that the trial court did not abuse its discretion in allowing the introduction of the transcript into evidence.

 Finally, Appellant argues that the trial court should have provided a limiting instruction to the jury and that the trial court improperly denied his motion for such an instruction. At trial, counsel for Appellant requested a limiting instruction. The trial court insisted that it had "given limited instructions." Appellant chose not to pursue the issue. According to Tennes-see Rule of Appellate Procedure 36(a), Appellant has waived this issue. The Rule provides that "[n]othing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of the error." Tenn. R.App. P. 36(a). Appellant has waived this claim by failing to pursue the matter. This issue is waived.

*Cumulative Effect of Errors*

Finally, Appellant argues that the cumulative effect of the trial court's errors entitle him to a new trial. We have found no errors that affected the outcome of the trial. Appellant is not entitled to relief on this issue.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.