IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs February 3, 2015

**UNDRAY LUELLEN v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 07-08953     Glenn I. Wright, Judge**

_____

**No. W2014-00508-CCA-R3-PC  -  Filed May 14, 2015**

_____

The petitioner, Undray Luellen, appeals the denial of his petition for post-conviction relief, arguing that he received ineffective assistance of counsel. After review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

James E. Thomas, Memphis, Tennessee, for the Defendant-Appellant, Undray Luellen.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Rachel Russell, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**FACTS**

The petitioner was convicted of two counts of especially aggravated kidnapping, one count of aggravated kidnapping, and one count of aggravated criminal trespass and was sentenced to an effective term of forty-four years in the Tennessee Department of Correction. This court affirmed the judgments of the trial court on direct appeal, and the Tennessee Supreme Court denied the petitioner's application for permission to appeal.

The facts resulting in the petitioner's convictions were set out by this court on direct appeal as follows:

On June 17, 2007, the adult victim, Terri Erby, and her five-year-old granddaughter . . . were asleep at the victim's home in Memphis, Tennessee. The victim's eighteen-year[-]old son was also asleep in the home. At approximately 12:30 a.m., the victim heard a noise at her back door. When she got out of bed to check on the noise, she saw [the petitioner] and another man attempting to break into her home. The victim ran into her son's room, but he was still asleep. She then ran to her bedroom, locked the door, and got under the covers with her granddaughter. [The petitioner] barged into the bedroom, pointed a gun at the victim, and forced her to get out of bed. The victim began to panic, and [the petitioner] started asking for Tanishia Erby, the victim's daughter and [the petitioner]'s ex-girlfriend. The victim begged [the petitioner] not to hurt them. [The petitioner] told his accomplice not to bother the victim's son since he was asleep.

The victim told [the petitioner] several times that Tanishia was not at her home and that she was at the victim's sister's home, even though the victim knew Tanishia was at the movies with a friend. However, [the petitioner] became very agitated that Tanishia was not there. He then forced the victim and her granddaughter at gunpoint to leave the home with him and the accomplice, who had a knife. The victim described [the petitioner]'s weapon, "It was a big, black gun. That's all I can remember. I think it was a nine millimeter[.]" The victim then testified that the gun that was taken from [the petitioner] at the time of his arrest looked similar to the gun [the petitioner] had the night of her kidnapping. The victim, her granddaughter, [the petitioner], and the accomplice left the home in the victim's car. As they were on their way to the victim's sister's house, [the petitioner] forced the victim to call Tanishia's cell phone and to tell her that . . . Tanishia's daughter and the victim's granddaughter, had been injured and they were taking her to the hospital. During the victim's phone conversation with Tanishia, she tried to secretly inform her daughter that [the petitioner] had kidnapped her and [her granddaughter]. Tanishia finally asked the victim if [the petitioner] was present, and the victim responded affirmatively. The victim also called her sister. As they drove up to the victim's sister's house, [the petitioner] observed several people in the yard and instructed the victim not to drive there. [The petitioner] then called a female friend and asked her to meet them on Chuck Street. When the friend arrived, [the petitioner] told her that he needed to use her car because the victim's car was "hot." The friend refused to switch cars, and [the petitioner] forced the victim and [the victim's granddaughter] out of the victim's car and into the backyard of a house on Chuck Street. At that

point, [the petitioner] started making numerous phone calls in an attempt to locate Tanishia. During each call, [the petitioner] informed the individuals on the line that he was going to hold the victim and [the victim's granddaughter] hostage until Tanishia arrived.

[The petitioner] told the victim that he would hurt or kill her and [her granddaughter] if Tanishia did not appear, and the victim pleaded with him not to hurt [her granddaughter]. She told [the petitioner] to take her or kill her instead of harming [her granddaughter]. [The petitioner] finally agreed not to hurt [the victim's granddaughter]. During this time period, [the victim's granddaughter] was distraught, clung to the victim, and repeatedly asked to go home. The victim was aware that [the petitioner] had previously kidnapped Tanishia and had a history of violent behavior. [The petitioner], his accomplice, the victim, and [the victim's granddaughter] stayed in the backyard for about an hour before [the petitioner] forced the victim and [her granddaughter] over a fence, and they all got back in the victim's car. He then told the victim to drive to the expressway and stop at a gas station. [The petitioner] took money from the victim for gas and continued to make phone calls in an attempt to locate Tanishia. During each of these calls, [the petitioner] informed the other party that he would release the victim and [her granddaughter] if Tanishia would appear. He also continued to threaten the victim. The victim was forced to drive around for approximately one hour before she was told to stop at the Waterfront Apartments. At this point, several hours had passed from the time of the initial kidnapping.

After arriving at the apartments, [the petitioner] and the accomplice took the keys to the car, told the victim not to move, and disappeared into an apartment for a short period of time. Once they were gone, the victim rescued [her granddaughter] from the backseat and was attempting to flee when the accomplice returned to the car. The accomplice forced the victim and [her granddaughter] back into the car and informed the victim that he would kill her if she refused to perform oral sex on him. The accomplice then brandished his knife and again told the victim that he would cut [her granddaughter] if the victim did not perform oral sex on him. Before the victim was forced to comply, [the petitioner] returned to the car. [The petitioner] told the victim that he loved Tanishia. [The petitioner] then said that "he wasn't going back to jail, he couldn't do that, [and] he wasn't going to do that." He also said that he wanted Tanishia "to change her story [regarding his previous kidnapping and assault of Tanishia as charged in the first indictment]". He said that "[i]f [Tanishia] changed her story[,]

3

everything would be all right." Finally, he told the victim that he would let her and [her granddaughter] go, but she was not to tell the police that he was responsible for the break-in or their kidnapping. [The petitioner] said that if she informed the police about this incident he would kill her. He then released the victim and [her granddaughter] and allowed the victim to drive away in her car.

State v. Undray Luellen, No. W2009-02327-CCA-R3-CD, 2011 WL 2557010, at *1-2 (Tenn. Crim. App. June 27, 2011), perm. app. denied (Tenn. Oct. 18, 2011).

The petitioner filed a *pro se* petition for post-conviction relief and, after the appointment of counsel, an amended petition was filed. In his petitions, among other things, the petitioner raised the three allegations of ineffective assistance of counsel pursued on appeal: (1) trial counsel failed to request a jury-out hearing pursuant to Tennessee Rule of Evidence 404(b) during Tanishia Erby's testimony or preserve the issue for appeal; (2) trial counsel failed to object to hearsay testimony from the victim concerning an out-of-court statement by the victim's minor grandchild; and (3) appellate counsel failed to challenge the sufficiency of the evidence of his especially aggravated kidnapping convictions. We will attempt to confine our summary of the evidentiary hearing to testimony that is relevant to these issues.

The petitioner's trial counsel testified that he was appointed to represent the petitioner in August of 2007, and the case went to trial in July of 2009. Counsel met with the petitioner ten to twenty times in the jail to discuss the case, not including the times they met at the courthouse. During those visits, counsel and the petitioner talked about "what his offer was and what he was facing and the evidence against him and the fact that we had no defense."

Asked whether the victim ever testified that the petitioner pointed a firearm at her, trial counsel said, "The allegation was that a firearm was used to remove her from the house. Did he ever point it directly at her, no, but the allegations or the facts were that he used it to kidnap her." Counsel was then asked if he "would agree that there was no testimony the weapon was ever used but [the petitioner] merely possessed it," to which he responded, "[T]here was testimony that [the petitioner] used the gun to get them to leave the house and to drive them around in the car."

Trial counsel testified that he did not recall the victim testifying about how the incident affected the child victim, nor did he recall the victim testifying that the child victim had to undergo counseling or that the child victim would ask if the petitioner was coming to get them. Counsel agreed that, if those statements were made, they would "[p]erhaps" be objectionable. Counsel recalled that allegations concerning another

4

kidnapping case against the petitioner were brought in through Tanishia Erby's testimony. Counsel did not request a jury-out hearing or 404(b) hearing because he had already filed and argued a motion in limine regarding this testimony and renewed the objection when the State sought to introduce it.

The petitioner's appellate counsel testified that the appellate court addressed the petitioner's Rule 404(b) argument and determined that the trial court did not abuse its discretion in admitting the evidence, even though the argument was waived by trial counsel's failure to raise it at trial. Appellate counsel acknowledged that he did not challenge the sufficiency of the evidence on appeal with respect to the use of a handgun to effectuate the kidnapping because the evidence showed that the gun was drawn when the kidnapping was committed, even though there was no testimony that the petitioner pointed it directly at the victim. Appellate counsel's interpretation of the evidence was that the petitioner "did use the firearm, that it was not simply possessing." Appellate counsel believed that the proof that the petitioner committed especially aggravated kidnapping "was very strong," and he remembered the appellate court opinion repeatedly stating there was "overwhelming proof" of the petitioner's guilt.

The petitioner testified that trial counsel objected to mention of the charges of kidnapping and assault against Tanishia Erby but did not request a jury-out hearing. He claimed that, without a jury-out hearing, the judge could not determine whether the other acts actually occurred by a preponderance of the evidence or if it was prejudicial to him. He also felt that trial counsel should have requested a curative instruction regarding Tanishia Erby's testimony because "that testimony prejudiced the minds of the jury as to [his] guilt for the kidnapping that [he was] on trial for at the time." The petitioner stated that counsel did not object to the victim's hearsay testimony about the child victim being traumatized and afraid. He claimed that his rights under the confrontation clause were violated because the child victim did not testify and was not subject to cross-examination. However, he acknowledged that having the five-year-old victim testify could have been even more damaging to his case. The petitioner stated that he never corresponded with appellate counsel regarding his appeal and believed it was being handled by another person at the firm.

Following the conclusion of the hearing, the post-conviction court entered a written order denying relief. The court found that the petitioner failed to establish by clear and convincing evidence that he received ineffective assistance of counsel.

## ANALYSIS

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). When an evidentiary

5

hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). Moreover, the reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the

6

proceeding would have been different." Strickland, 466 U.S. at 694. The same principles apply in determining the effectiveness of trial and appellate counsel. Campbell v. State, 904 S.W.2d 594, 596 (Tenn. 1995).

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

## I. 404(b)

The petitioner first argues that trial counsel was ineffective for failing to request a jury-out hearing pursuant to Rule 404(b) of the Tennessee Rules of Evidence during Tanishia Erby's testimony about when the petitioner had previously kidnapped and assaulted her. He also argues that trial counsel was ineffective for failing to preserve for review the trial court's failure to make findings in a jury-out hearing regarding the victim's testimony that she was scared when the petitioner kidnapped her because she knew about his prior kidnapping and assault of Tanishia Erby.

The petitioner, however, fails to allege any prejudice resulting from these supposed errors. He acknowledges that this court effectively addressed these issues in the direct appeal when it addressed his contention that the trial court should not have admitted evidence of Tanishia's kidnapping and assault. Although this court noted that the petitioner had not sought a jury-out hearing, it addressed the merits of the petitioner's argument anyway and found that the evidence was admissible to show the victim's state of mind and the petitioner's motive. This court also noted that the evidence was relevant, its probative value was not substantially outweighed by the danger of unfair prejudice, and the evidence of the petitioner's guilt was so "overwhelming" any error would not have affected the judgment or resulted in prejudice to the judicial process.

In addition, the testimony at the evidentiary hearing established that trial counsel intentionally did not ask for a separate jury-out hearing because he had objected to the testimony under several theories and the testimony was the subject of a motion in limine that was heard before trial. With regard to these issues, the post-conviction court found that the petitioner

> has provided no proof that the Court would not have found proof of admissibility, nor has [the] [p]etitioner evidenced in any way in which he was further prejudiced by lack of a jury-out hearing. Further, the criminal court of appeals reviewed the testimony at issue and found that the trial

7

court did not abuse its discretion in admitting the evidence. . . . [The] [p]etitioner has not shown that there is a reasonable likelihood that the trial court would have ruled differently on the objection in a jury-out hearing. As such, [the] [p]etitioner has failed to meet the standard of showing that, but for counsel's errors, the result of the proceeding would have been different.

The petitioner simply fails to establish how having a jury-out hearing or more properly preserving the issues for review would have resulted in a different outcome. The record supports the post-conviction court's determinations.

## II. Hearsay

The petitioner next argues that trial counsel was ineffective for failing to object to hearsay testimony by the victim concerning out-of-court statements made by the child victim. He also asserts that the introduction of the testimony violated his rights under the Confrontation Clause.

The testimony of which the petitioner complains came up in the victim's answer to a question about whether she sought treatment for the child victim. The transcript reveals the following:

Q: Have you sought treatment for [the child victim] involving this incident?

A: She saw the counselor in her school[.] We didn't just, they recommended it because she started talking about it in school. She couldn't even come to my house I know for a couple of months after that happened. I couldn't even come to my own home. I went and got clothes. I couldn't even stay there. I know it was about two weeks before I even could feel comfortable coming back to my house. And, I still was uncomfortable then. And, it's been very traumatic. I mean, just being in here, just going back through the whole testimony, right now, I can't believe I'm this steady because I [sic] been just messed up behind this. Just bringing it back up again, I know it's been two years but just thinking about it is still traumatic for me and for my grandbaby, I know. I mean, she's still afraid to hear his name. She say is [the petitioner] coming, is [the petitioner] going to get us? You know, she'll still say that. And, it's just awful.

The petitioner alleges that the child victim's question "is [the petitioner] coming, is [the petitioner] going to get us?" recounted in the victim's testimony is hearsay and

that counsel should have objected to it. Rule 801(c) of the Tennessee Rules of Evidence defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." A "'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person if it is intended by the person as an assertion." Tenn. R. Evid. 801(a).

In this regard, the post-conviction court noted that a question could be considered an assertion, but that the record had to be clear that the declarant intended it as an assertion, and that there was no such evidence in the record. The court further found that, even if the testimony was hearsay, the petitioner failed to show a reasonable probability that the outcome of the trial would have been different had the testimony not been admitted.

We discern no deficient performance in counsel's failure to object because the statement is not hearsay in that it was not offered into evidence to prove the truth of the matter asserted. Our supreme court noted in State v. Flood, 219 S.W.3d 307, 314-15 n.5 (Tenn. 2007), that "questions are often not hearsay because they are not offered to prove the truth of their content[.]" To the extent the statement possibly constituted a statement, it was a statement of the child victim's "then existing state of mind, emotion, sensation, or physical condition," which is specifically excluded by the hearsay rule. Tenn. R. Evid. 803(3). In fact, the petitioner claims in his brief that the statement "was clearly offered to show that the minor child was afraid and reliving the incident." Moreover, the petitioner has failed to prove how he was caused prejudice. The child victim's question was repeated during a lengthy statement by the victim describing the impact of the petitioner's kidnapping spree. It is hard to imagine how taking the one alleged hearsay statement out of the soliloquy would have changed the impact of the victim's testimony that the child victim was traumatized, had to receive counseling, and could not return to the victim's house for months. Furthermore, as noted by this court on direct appeal, the evidence of the petitioner's guilt was "overwhelming." The record supports the post-conviction court's determinations.

As to the petitioner's argument that his rights under the Confrontation Clause were violated by the testimony, he is likewise entitled to no relief. The Confrontation Clause only applies to testimonial statements. Davis v. Washington, 547 U.S. 813, 823 (2006). A testimonial statement is "typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact and includes statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." State v. Ramos, 331 S.W.3d 408, 415 (Tenn. Crim. App. 2010) (internal citations and quotations omitted). The child victim's question was not a testimonial statement; thus, there is no Confrontation Clause issue.

9

### III. Sufficiency

The petitioner lastly argues that appellate counsel was ineffective for failing to challenge the sufficiency of the evidence on appeal. He asserts that the elements for especially aggravated kidnapping were not met because the testimony at trial was that he "only possessed a weapon . . . [and] never pointed the gun at [the victim]."

As to this allegation, the post-conviction court found that appellate counsel made a tactical decision to not challenge the sufficiency of the evidence because he "felt that the proof in this specific trial was very strong." The court additionally found that, given that the appellate court repeatedly stated that the evidence of the petitioner's guilt was overwhelming, "[i]t cannot be said that arguing sufficiency of the evidence would have influenced the result of [the] petitioner's appeal at all."

Especially aggravated kidnapping requires proof that the kidnapping was "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon[.]" Tenn. Code Ann. § 39-13-305(a)(1). Aggravated kidnapping requires proof that the kidnapping was committed "[w]hile the defendant is in possession of a deadly weapon or threatens the use of a deadly weapon." Id. § 39-13-304(a)(5).

In support of his argument, the petitioner relies on testimony by the victim that the petitioner "had put the gun in his back pocket." However, the petitioner ignores that immediately following that statement, the victim testified that the petitioner "was constantly telling me that he would hurt me and [the child victim] if we didn't, kill us or whatever if he didn't get Tanishia or whatever." He also ignores other testimony by the victim concerning the gun: that the petitioner kicked in her door and came into the house with the gun in his hand; that he "held the gun and told [her] to get up"; and that, although he did not point the gun directly at her, "he just had it kind of like on the side" to emphasize that "he wasn't playing[.]"

The petitioner further ignores the testimony of trial and appellate counsel that he used the gun to accomplish the kidnapping. Trial counsel stated that "the proof was that he used a gun to get her to leave the house. Whether or not he pointed it directly at her, he had the gun, it was out, he used it to get them to leave the house[.]" Appellate counsel stated that the record "indicated . . . that the gun was drawn when the kidnapping was committed," and that it would not change his opinion that the firearm was used to accomplish the kidnapping if the petitioner had not pointed the gun directly at the victim.

The petitioner has simply failed to establish that appellate counsel performed deficiently in not challenging the sufficiency of the evidence on appeal, or that he was prejudiced by such alleged error. Given the extremely deferential standard of review on appeal to a challenge of the sufficiency of the evidence, there is little doubt the appellate court would have concluded there was sufficient evidence for the jury to find that the petitioner used the gun to accomplish the kidnappings.

## **CONCLUSION**

Based on the foregoing authorities and reasoning, we affirm the denial of the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE